EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* VÍCTOR LÓPEZ ARISTUD, acusado y apelante.

*Número:* CR-66-462　　　*Resuelto:* 8 de noviembre de 1967

*A. De Jesús Matos* y *R. De Jesús Cintrón,* abogados del apelante; *J. B. Fernández Badillo, Procurador General,* y *Peter Ortiz, Procurador General Auxiliar,* abogados de El Pueblo.

PER CURIAM: El apelante fue convicto por un tribunal de derecho por una infracción al Art. 6 de la Ley de Armas, en grado menos grave. 25 L.P.R.A. sec. 416. El único error que señala consiste en impugnar la apreciación que de la prueba hizo el tribunal. El planteamiento no tiene mérito. A continuación nos explicamos.

La prueba demuestra que con motivo de una pelea que se formó frente a un cafetín una madrugada, el apelante sacó un revólver que portaba en la cintura y le hizo dos

disparos a Anastasio Dávila. En esos momentos—eran las tres de la mañana—la dueña del cafetín estaba cerrando el negocio. Una de las balas perforó una puerta del negocio y se incrustó en un madero del mostrador. De allí fue extraída por el policía que luego vino a investigar los hechos.

La prueba de cargo consistió de las declaraciones de Anastasio Dávila; de María de los Ángeles Martínez, la dueña del negocio; y del policía Emilio Rohena. Más adelante nos ocuparemos de la prueba de defensa.

Sobre los disparos Anastasio Dávila declaró como sigue:

"HON. FISCAL: ¿Hasta qué sitio del negocio llegó el acusado?

R—Dio la vuelta por detrás del negocio, hasta la puerta que se cierra el negocio.

P—Y cómo estaba el negocio?

R—Estaba cerrado.

P—Y qué pasó?

R—Viró hacia atrás, al tiempo de bajar la escalerita hacia la carretera, repitió la misma palabra que había dicho Miguel Castro.

P—Qué dijo?

R—Se le cagó en la madre a los de las Lajas.

P—Quién?

R—El acusado; dijo, por culpa de esta gente, cerraron el negocio aquí, y entonces, bajo hacia la carretera. Entonces, volvió Miguel Castro y se alteró y ahí me mandó un puño.

P—Quién?

R—Miguel Castro.

LIC. DE JESÚS: Quién es Miguel Castro?

HON. JUEZ: Un señor que dice este señor estaba allí, según él, le habló malo, primero, según él. Continúe.

R—Cuando me mandó el puño, lo cogí por la mano y lo eché hacia atrás, entonces, Miguel y Víctor, los dos, se me tiraron encima, entonces, cogí un muchacho y lo metí por el medio y en ese intermedio, hubo los dos disparos.

P—Quién hizo los disparos?

R—Víctor López.

P—Cuántos disparos?

R—Dos.

P—Con qué hizo este señor, Víctor López, los disparos?

R—Con un revólver.

P—Usted vio ese revólver?

R—Sí, señor.

P—Cómo era?

R—Era un revólver negro con un cañón largo, como alrededor de tres pulgadas.

P—Cuando este acusado hizo esos disparos, usted estaba, en qué posición, en relación con el negocio de doña María Martínez?

R—Yo estaba de espaldas hacia la tienda, hacia el negocio, y él estaba hacia el frente del negocio.

P—Quién?

R—Víctor López.

Hon. Juez: Usted estaba de espaldas, dice?

R—De espaldas hacia el negocio, de frente hacia él." (T.E. págs. 11–13.)

Más adelante el mismo testigo declaró como sigue:

"Hon. Fiscal: En qué mano tenía el revólver?

R—En la mano derecha.

P—Y hacia dónde apuntaba?

R—Hacia mí.

P—E inmediatamente, usted dijo, había corrido para dónde?

R—Hacia la casa de María de los Ángeles." (T.E. pág. 65.)

La María de los Ángeles allí mencionada es la misma Sra. Martínez, dueña del negocio que vivía en los altos del mismo.

La testigo María de los Ángeles Martínez declaró que como a las tres de la mañana oyó dos detonaciones y subió las escaleras hacia su casa y arriba, frente a la puerta, encontró a Anastasio Dávila "bien pálido y nervioso." Lo hizo entrar. También declaró que luego pudo verificar que la puerta del negocio tenía un agujero y que había un plomo incrustado en el mostrador.

El policía Emilio Rohena declaró que la Sra. María de los Ángeles Martínez fue al cuartel y le informó lo sucedido. Que él fue al sitio de los hechos y allí vio la perforación en la puerta y el plomo incrustado en el mostrador. Más tarde

extrajo el plomo y lo guardó. En el acto del juicio identificó el mismo.

La prueba de defensa consistió de las declaraciones del Teniente de la Policía Luis Vázquez; de la de Joseph Berríos y Gregorio Castillo.

El Teniente Vázquez ni presenció los hechos ni declaró sobre los mismos. Lo que declaró es que Miguel Castro tiene inscrito un revólver Colt, calibre 38; que el plomo que le mostraron en el juicio era, en su opinión, un plomo calibre 38 y que ese revólver pudo haber disparado ese plomo.

Asumiendo que todo lo que declaró el Teniente Vázquez es cierto, nada de su testimonio está en conflicto con la prueba de cargo. Si el plomo era calibre 38 cualquier revólver calibre 38 pudo haberlo disparado. Sin duda hay miles de revólveres calibre 38 en el país y cualquiera de ellos pudo haber disparado ese plomo. Sin duda, por no ser perito en balística y por no haber hecho un estudio minucioso en el laboratorio de la bala y del revólver, el Teniente no podía decir, y no lo dijo, que esa bala había sido disparada por el revólver de Miguel Castro. Tampoco hay prueba en el récord de que Miguel Castro estuviese armado de revólver en aquel lugar en aquel momento.

El testigo Joseph Berríos declaró que era "Investigador Privado." Tampoco presenció los hechos ni declaró sobre los mismos. Declaró que luego del suceso fue al negocio y tomó sendas medidas del edificio, de la carretera y del mostrador. Declaró que vio la perforación en la puerta y un pequeño orificio en el mostrador. Declaró que trabaja para el Lcdo. Roberto De Jesús Cintrón, quien era el abogado defensor del apelante en el juicio.

El tercero y último testigo de la defensa fue Gregorio Castillo. Declaró que mientras conversaba con el apelante oyó una detonación; que no lo vio disparar; que no le vio armas; que lo que le vio en la mano fue un encendedor de color verde y blanco. Que luego del disparo no hizo averigua-

ción alguna ni le preguntó a nadie, ni al acusado de lo que se trataba; que se fue para su casa.

Como puede verse, de los seis testigos que declararon de cargo y de descargo, la única declaración que presenta un conflicto es la de Gregorio Castillo. Al tribunal de instancia correspondía dirimir ese conflicto en.la prueba y así lo hizo. En el récord, que hemos leído completamente, hay base para sostener la determinación que hizo el tribunal.

*Se confirmará la sentencia apelada.*

El Juez Asociado Señor Belaval no intervino.